IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE GUILLEMETTE, individually and for others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA-PACIFIC GYPSUM LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.<br><br>**NOTICE OF REMOVAL OF ORIGINAL CLASS ACTION COMPLAINT FOR DAMAGES** |

TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF WASHINGTON

AND TO: THE CLERK OF THE ABOVE-ENTITLED COURT

AND TO: Plaintiff and Counsel for Plaintiff

PLEASE TAKE NOTICE that Defendant Georgia Pacific Gypsum ("Defendant"), by this Notice, hereby removes the state action described below from the Superior Court of the State of Washington in and for the County of Pierce to the United States District Court for the Western District of Washington at Tacoma. This removal is based upon the Class Action Fairness Act ("CAFA"), see 28 U.S.C. §§ 1332(d) and 1441, and is timely under 28 U.S.C. § 1446. Written notice of the filing of this Notice of Removal is being filed with the Clerk of the Superior Court

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

of the State of Washington, in and for the County of Pierce, and shall be served upon all parties together with a copy of this Notice pursuant to 28 U.S.C. § 1446(d).

In support of its Notice of Removal, Defendant asserts the following:

## I. PLEADINGS

1. Plaintiff Jose Guillemette ("Plaintiff"), an individual and resident of the State of Washington, commenced an Original Class Action Complaint for Damages against Defendant on July 10, 2026, in the Superior Court of the State of Washington in and for the County of Pierce, captioned *Jose Guillemette v. Georgia-Pacific Gypsum LLC, Case No. 26-2-10020-4*. *See* Declaration of Sarah N. Turner ("Turner Decl."), **Exhibit A**, ("Complaint"). Plaintiff served Defendant on July 21, 2026. *See* Turner Decl., **Exhibit B** ("Service of Process Notice"). The Complaint sets forth three counts: (1) Failure to Pay Overtime Under the WMWA; (2) Willfully Withholding Earned Wages Under the WWRA; and (3) Failure to Provide Bona Fide Meal and Rest Period Under the WIWA.

2. Pursuant to 28 U.S.C. §1446(a), a copy of all process and pleadings served upon Defendant to date are attached. *See* Turner Decl. **Exhibit B**.

3. Defendant is removing this action to this Court pursuant to 28 U.S.C. §§ 1332(d) and 1446 based on CAFA.

## II. TIMELINESS

4. A notice of removal is timely when it is made within 30 days of proper service of a complaint from which it may first be ascertained that the case is one which is or has become removable. 28 U.S.C. § 1446(b). However, the 30-day period for removal "starts to run from the defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 691–92 (9th Cir. 2005) (internal quotations omitted). "[A]s long as the complaint or 'an amended pleading, motion, order or other paper' [received by the defendant] does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time." *Rea v.*

*Michael's Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014). Defendant was served with the Complaint on **July 21, 2026**. The Complaint set forth that the "aggregate amount in controversy is under $5 million and the size of Guillemette's proposed class is fewer than 100 individual members (but more than 40)." *See* **Exhibit A**, at ¶ 22. On August 3, 2026, Georgia Pacific conducted a search as to potential class members and determined there were approximately **197 potential class members**. *See* Turner Decl., **Exhibit C** (Email dated August 3, 2026, identifying potential class size). Based on this information, the 30-day period for removal commenced on August 3, 2026, the date Defendant discovered that the potential class size met the requirement under CAFA. This makes the removal deadline **September 2, 2026**, 30 days from August 3, 2026. However, out of an abundance of caution, Defendant has filed this Notice of Removal within 30 days of Defendant's receipt of the Complaint which was served on July 21, 2026.

## III. VENUE AND INTRA-DISTRICT ASSIGNMENT

5. The United States District Court for the Western District of Washington at Tacoma, is the proper venue for removal under 28 U.S.C. § 1441 because Plaintiff initiated his lawsuit in Pierce County. *See* W.D. Wash. Loc. Civ. R. 3(e)(1).

6. Venue of this action is also proper because jurisdiction is based on CAFA, and the action may be venued in a judicial district in which a substantial part of the events or omissions giving rise to the claim are alleged to have occurred. *See* 28 U.S.C. § 1391(b). Plaintiff alleges in the Complaint that venue is proper in Pierce County because "Defendant transacts business in Pierce County, and some part of the cause arose in Pierce County." *See* **Exhibit A**, at ¶ 21. Therefore, venue properly lies in the United States District Court for the Western District of Washington at Tacoma pursuant to 28 U.S.C. §§ 128(b), 1391, 1441, and 1446.

## IV. CAFA JURISDICTION

7. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action filed under Rule 23 of the Federal Rules of Civil Procedure or

similar state rule; (b) in which the putative class contains one hundred or more members; (c) in which any member of a putative class of plaintiffs is a citizen of a state different from any defendant, with certain limitations that apply where one or more defendants is a citizen of the state in which the action was filed; and (d) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. See 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets all of CAFA's requirements for removal and is properly removed by the filing of this Notice.

8. Class Action Filed under State Law. Plaintiff initiated a civil action in Pierce County Superior Court asserting class action allegations under Washington Civil Rule 23. *See* **Exhibit A**, at ¶¶ 20, 27, 28.

9. Putative Class Size. CAFA provides this Court with jurisdiction over a class action where "the number of members of all proposed plaintiff classes in the aggregate is [not] less than 100." 28 U.S.C. § 1332(d)(5)(B). CAFA defines "class members" as those "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D). This requirement is readily met here.

10. In this case, Plaintiff expressly pleads a class action under Washington Civil Rule 23 on behalf of a proposed class. Specifically, Plaintiff defines the proposed class as follows:

> **All hourly employees in Washington who GP employed under its pre-shift off the clock policy, rounding policy, meal period policy, and/or rest period policy during the past 3 years through final resolution of this action (the "Hourly Employees").**

*See* **Exhibit A**, at ¶ 28.

11. Defendant's internal records reflect that there are over 100 putative class members in this case. In particular, upon a review of Defendant's records, Defendant employed approximately **197 hourly employees,** in the State of Washington during the putative class period of July 10, 2023 through July 10, 2026 (the date Plaintiff filed this Complaint). *See* Declaration of

Sean Stewart ("Stewart Decl."), ¶¶ 4-5. This satisfies CAFA's numerosity requirement. 28 U.S.C. § 1332(d)(5)(B).

12. Minimum Diversity. CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1130–31 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

13. Citizenship of Plaintiff. For diversity purposes, an individual is a "citizen" of the State in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is their permanent home, where that person resides with the intention to remain or to which that person intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Allegations of residency in a state court complaint create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2s 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Christian v. Regence Bluecross Blueshield of Or.*, No. C20-5445-RJB-MAT, 2020 WL 5038733 (W.D. Wash. Aug. 25, 2020) (finding a place of residence provides "'prima facie' case of domicile").

14. Presumably Plaintiff intentionally failed to disclose his residency in the Complaint. Defendant's internal records reflect that Plaintiff is a resident of Tacoma, Washington. *See* Stewart Decl., ¶ 3. Therefore, it is presumed that Plaintiff continues to be domiciled in Washington and is a citizen of Washington.

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

15. Citizenship of Defendant. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(1); *see Davis v. HSBC Bank. Nev., N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (holding that LLCs and LPs are unincorporated associations for purposes of CAFA); *see Abrego v. Dow Chem. Co*., 443 F.3d 676, 684 (9th Cir. 2006) (citations and internal quotations omitted) (stating that CAFA "departs from the rule . . . that a limited partnership's or unincorporated associations' citizenship for diversity purposes can be determined only by reference to all of the entity's members").

16. For purposes of diversity, an entity's "principal place of business" "refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). An entity may only have a singular "principal place of business," *see id*. at 93, which is the corporation's "nerve center." *Id*. at 81. "[I]n practice [this] should normally be the place where the corporation maintains its headquarters." *Id*. at 93.

17. Defendant is a limited liability company formed under the laws of the State of Delaware, with its corporate headquarters and principal place of business in Atlanta, Georgia, where its high-level officers direct, control, and coordinate corporate and business activities. *See* Stewart Decl., ¶ 6. *See also* **Exhibit A**, at ¶ 29.

18. Consequently, for CAFA jurisdiction, Defendant is a citizen of Georgia. Therefore, minimal diversity is satisfied as Plaintiff is a citizen of a different state than the Defendant. *See* 28 U.S.C. § 1332(a)(1).

19. Diversity Exclusions. There are certain situations where a district court is permitted or required to decline to exercise jurisdiction under CAFA. In all such situations enumerated in the statute, one or more of the defendants are citizens of the state in which the action was originally filed. 28 U.S.C. §§ 1332(d)(3), 1332(d)(4)(A)(i)(II)(cc),1332(d)(4)(B). As discussed above, Defendant in this action is not a citizen of Washington.

20. Governmental Exclusion. Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." As discussed above, Defendant is a limited liability company, not a state, state official, or other governmental entity exempt from CAFA.

## V. AMOUNT IN CONTROVERSY

21. Amount in Controversy. For purposes of removal the amount in controversy exceeds $5,000,000, as set forth below.

22. CAFA requires the "matter in controversy" to exceed the "sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(2).

23. To remove a case from a state court to a federal court, a defendant must file a notice of removal containing a short and plain statement of the grounds for removal." *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (citing 28 U.S.C. § 1446(a)). When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* The defendant's notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89; *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (same). Evidence establishing the amount in controversy is only required when plaintiff contests, or the court questions, defendant's allegations. *See Dart*, 574 U.S. at 88. "[N]o antiremoval presumption attends cases invoking CAFA." *Id.* at 98.

24. "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" the jurisdictional minimum. 28 U.S.C. § 1332(d)(6). The "plaintiff's complaint" is a court's "first source of reference in determining the amount in controversy." *LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). The Complaint does not state a specific amount of damages; but rather makes an unsupported conclusory statement that "the

aggregate amount in controversy is under $5 million . . ." *See* **Exhibit A**, at ¶ 22; p.17 "Relief Sought." The facts alleged below, in combination with the allegations of the Complaint, establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *See Rodriguez v. AT & T Mobility Services LLC*, 728 F.3d 975, 981 (9th Cir. 2013); *Lowdermilk v. United States Bank National Assoc*., 479 F.3d 994, 998 (9th Cir. 2007) (where the complaint does not state the amount of damages claimed, the removing defendant may establish the amount in controversy for CAFA jurisdiction by a preponderance of the evidence). The amount in controversy is based on the claims asserted, without reference to defenses to the claims. *See Smithers v. Smith*, 204 U.S. 632, 642 (1907); *Schunk v. Moline, Milburn & Stoddart Co*., 147 U.S. 500, 505 (1893); *Lewis v. Verizon Communications, Inc*., 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.") (citation omitted); *see also Chavez v. JP Morgan Chase & Co*., 888 F.3d 413, 414–15 (9th Cir. 2018) (the amount in controversy for purposes of general diversity removal "encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

25. Defendant denies the validity and merits of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, assuming Plaintiff prevails on his claims, the amount in controversy as alleged by Plaintiff exceeds the sum of $5 million.

26. <u>The Putative Employee Class</u>. Plaintiff seeks damages on behalf of a putative class of Hourly Employees in Washington. Plaintiff alleges that "[he] and the other Hourly Employees are all subject to GP's same or similar policies – its pre-shift off the clock policy, rounding policy, meal period policy, and rest period policy – while performing similar work." *See* **Exhibit A**, at ¶¶ 34, 82. Plaintiff also alleges, "GPs pre-shift off the clock policy, rounding policy, meal period policy, and rest period policy renders Guillemette and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages, including overtime wages, and

bona fide meal and rest periods." *See* **Exhibit A**, at ¶ 90. Plaintiff further alleges that the relevant statute of limitations period on these claims is three years. For purposes of removal only, and based on a preliminary review of Defendant's records, the putative class of approximately 197 hourly employees conservatively worked approximately 38,038 workweeks between July 10, 2023 through July 10, 2026 (date the Complaint was filed). *See* Stewart Decl., ¶5. Further, the average hourly rate for the putative class during that period was approximately $27.39 per hour. *Id.*

27. **Failure to Pay Overtime Under the WMWA (Count I)**. Plaintiff alleges that Defendant has "violated, and is violating, the WMWA by failing to pay non-exempt employees (Guillemette and the other Hourly Employees) wages, including overtime wages at rate of at least 1.5 times their true regular rates of pay for all hours worked after 40 in a workweek." *See* **Exhibit A**, at ¶ 140. Plaintiff also alleges that he and the Other Hourly Employees "typically work similar, rotating 36 to 84 hour a workweek schedules 'on the clock.'" *See* **Exhibit A**, at ¶ 40. Using an estimate of 1.5 hours of missed unpaid overtime premium per workweek and assuming an average rate of pay of $27.39/hour as calculated above, the amount in controversy for the unpaid overtime wage claims total **$781,395.62** (38,038 workweek * 1.5 hour per workweek * $27.39/hour * 0.5 overtime premium).

28. Plaintiff also alleges that Defendant required him and the Hourly Employees to perform off the clock work by requiring him and the other Hourly Employees to put on safety gear, hard hat, steel-toed boots, face shields, safety glasses, and safety gloves, prior to the scheduled shift, on Defendant's premises, without compensation." *See* **Exhibit A**, at ¶ 43. Plaintiff alleged putting on the safety gear took 15 minutes each workday. *See* **Exhibit A**, at ¶ 44. Plaintiff further alleged that Defendant rounded Plaintiff and the other Hourly Employees time to the nearest quarter for Defendant's primary benefit and to the detriment of the employees. *See* **Exhibit A**, at ¶ 62.

29. Applying a conservative estimate, based on Plaintiff's own allegations in the Complaint of 15 minutes to put on safety gear and time was rounded to the nearest quarter, and assuming an average rate of $27.39/hour, the amount in controversy for off-the-clock claim and rounding totals **937,674.74** (38,038 workweeks * .9 hours (15 minutes off-the-clock + 30 minutes of rounding) * $27.39/hour).

30. **Failure to Provide Bona Fide Meal and Rest Period Under the WIWA (Count III)**. Plaintiff alleges that "due to understaffing combined with production demands, GP requires these employees to continue performing their normal job duties throughout their shifts without bona fide "meal periods." *See* **Exhibit A**, ¶ 70. Plaintiff further alleges that he and the Hourly Employees are to remain on duty and perform work throughout their shifts for GP's benefit, including during "meal period;" and are subjected to interruptions during any attempted "meal periods." *See* **Exhibit A**, ¶ ¶ 71-73. Similarly, Plaintiff alleges that Defendant failed to provide them with a bona fide ten minute rest period. *See* **Exhibit A**, ¶¶ 77-78. All of the foregoing language supports a violation rate between 20% and 60%. *See Washington v. Kerry Inc.*, No. 2:25-CV-00965-TL, 2025 WL 3089015, at *8-9 (W.D. Wash. Nov. 5, 2025) (citing with approval *Oda v. Gucci Am., Inc.*, No. C14-7468, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding 50% violation rate appropriate when complaint alleged defendants used "policies and procedures" that violated California law)); *see also Mills v. Saia, Inc.*, No. 6-cv-5033-BHS, 2026 WL 1078226, at *3 (W.D. Wash. Apr. 21, 2026) (finding 60% violation rate reasonable where complaint alleged that defendant "engaged 'in a common course of wage and hour abuse' and 'unlawful compensation practices.'").

31. Plaintiff's allegations suggest that all of his and the other Hourly Employees meal breaks were missed and /or interrupted daily. Therefore, applying an estimate of five missed meal periods per workweek and assuming an average rate of pay of $27.39 per hour, the amount in controversy for the missed meal period claim totals **$2,604,652.05** (38,038 workweeks * 2.5 hour per workweek *$27.39/hour). Regarding rest breaks, using an estimate of 2 missed rest periods

**GORDON REES SCULLY MANSUKHANI, LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

per workweek (that is out of at least 10 eligible rest breaks in a standard workweek) and assuming an average pay of $27.39/hour, the amount in controversy for the missed rest period claims totals **$347,286.94** (38,038 workweeks * (20/60) hours per workweek * $27.39/hour). The total amount in controversy for missed meal and rest breaks total **$2,951,938.99**.

32. **Willful Refusal to Pay Wages (Count II)**. Plaintiff also seeks double damages under RCW 49.52.070. *See* **Exhibit A**, at ¶¶ 144-153. This claim is derivative of the other claims. Thus, the amount in controversy for the double damages claim is **$4,671,009.35**, thereby increasing the total amount in controversy to **$9,342,018.70**.

33. Attorneys' Fees. Plaintiff also seeks attorneys' fees and costs. *See* **Exhibit A**, Relief Sought (f). It is well-settled that for purposes of the amount in controversy requirement, "where an underlying statute authorizes an award of attorneys' fees . . . such fees may be included in the amount in controversy." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007). Further, a reasonable estimate of future attorneys' fees should be included in the amount in controversy analysis. *See e.g., Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794-95 (9th Cir. 2018) (if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy, and district courts may estimate such fees based on their own knowledge and experience); *Arias*, 936 F.3d at 927-28 (reaffirming *Fritsch*).

34. The attorneys' fees benchmark in the Ninth Circuit is 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Reed v. Light & Wonder, Inc.*, No. 18-CV-565-RSL, 2022 WL 3348217, at *1 (W.D. Wash. Aug. 12, 2022) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1052 (9th Cir. 2002) (acknowledging 25% of common fund awards is the benchmark of attorneys' fees awards)).

35. The estimated amount in controversy calculated above is $17,155,974.58. Taking into account attorneys' fees at the benchmark 25 percent, increases the amount in controversy by $2,335,504.68, for a total amount in controversy of **$11,677,523.38**.[1]

36. Accordingly, the amount in controversy in this action exceeds the jurisdictional minimum of $5,000,000 for jurisdiction under CAFA.

## VI. NOTICE TO PLAINTIFF AND STATE COURT

In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers were or will be served promptly on Plaintiff's counsel and filed with the Clerk of the Pierce County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 have been or will be followed and satisfied.

## VII. RESERVATION OF RIGHTS

In the event this Court should be inclined to remand this action, Defendant requests that the Court issue an order to show cause why the case should not be remanded, giving the parties an opportunity to present proper briefing and argument prior to any possible remand. Such a procedure is appropriate when a remand order is not subject to appellate review.

Nothing in this Notice of Removal is intended to waive any defense, nor does it waive any defense, including but not limited to defenses stated in Defendant's Answer or Federal Rule of Civil Procedure 12(b), defenses to class certification, defenses on the merits, and defenses to claims for potential damages by Plaintiff or any other individual.

WHEREFORE, Defendant respectfully requests that this action now pending in the Pierce County Superior Court, State of Washington, be removed to the United States District Court for the Western District of Washington at Tacoma.

[1] Applying a more conservative calculation by assuming that the minimum wage claim is calculated at the average Washington minimum wage of $17.13, rather than the plaintiff rate used above, and further assuming none of the alleged off-the-clock time is overtime, and applying a lower violation rate, the amount in controversy still exceeds $5 million and therefore satisfies CAFA's jurisdictional threshold.

Dated: August 20, 2026

By: *s/ Sarah N. Turner*
Sarah N. Turner, WSBA No. 37748
GORDON REES SCULLY MANSUKHANI
701 Fifth Avenue, Suite 2100
Seattle, WA k98104
Phone: (206) 695-5100
sturner@grsm.com

*Attorney for Defendant*