E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

July 10 2026 10:31 AM

PIERCE COUNTY CLERK
NO: 26-2-10020-4

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF PIERCE**

| | |
|---|---|
| JOSE GUILLEMETTE, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA-PACIFIC GYPSUM LLC, a Delaware limited liability company,<br><br>Defendant. | **Case No.** ________________<br><br>**ORIGINAL CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1. Jose Guillemette (Guillemette) brings this class action to recover unpaid wages and other damages from Georgia-Pacific Gypsum LLC ("GP").

2. GP employed Guillemette as one of its Hourly Employees (defined below).

3. GP pays Guillemette and the other Hourly Employees by the hour.

4. Guillemette and the other Hourly Employees regularly work more than 40 hours a week.

5. But GP does not pay Guillemette and the other Hourly Employees for all their hours worked, including overtime hours.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

6. Instead, GP requires Guillemette and the other Hourly Employees to put on safety gear necessary to perform their job duties, "off the clock," on its premises, prior to the start of their shifts (GP's pre-shift off the clock policy).

7. But GP does not pay Guillemette and the other Hourly Employees for this work before their shifts.

8. GP's pre-shift off the clock policy violates Washington law by depriving Guillemette and the other Hourly Employees of earned wages, including overtime wages.

9. Additionally, GP requires Guillemette and the other Hourly Employees to clock in and out for their shifts via its timekeeping system, but GP automatically rounds their clock in and clock out punches to the nearest quarter hour (GP's "rounding policy").

10. GP automatically rounds these employees' clock in and clock out punches for its primary benefit and to their detriment.

11. And GP does not relieve Guillemette and the other Hourly Employees of all work duties for "meal periods" (GP's "meal period policy").

12. GP requires Guillemette and the other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts and/or subjects them to interruptions during any attempted "meal periods."

13. Guillemette and the other Hourly Employees regularly do not receive and are unable to take compliant, *bona fide* meal periods.

14. GP does not compensate them for missed or otherwise non-compliant "meal periods."

15. Guillemette and the other Hourly Employees likewise do not receive *bona fide* rest periods for every four hours worked or major fraction thereof.

16. Instead, GP requires Guillemette and the other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts and/or subjects them to interruptions during attempted "rest periods" (GP's "rest period policy").



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

17. GP's failure to provide Guillemette and the other Hourly Employees with compliant, *bona fide* meal and rest periods violates the Washington Industrial Welfare Act (WIWA) and related Washington Department of Labor & Industries (L&I) regulations.

18. GP's pre-shift off the clock policy, rounding policy, meal period policy and rest period policy violate the Washington Minimum Wage Act (WMWA) by depriving Guillemette and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

19. Likewise, as a result of GP's pre-shift off the clock policy, rounding policy, meal period policy and rest period policy, GP willfully withholds earned wages from Guillemette and the other Hourly Employees in violation of the Washington Wage Rebate Act ("WWRA").

## JURISDICTION & VENUE

20. This Court has original jurisdiction over this class action to recover money damages pursuant to RCW 2.08.010 and CR 23.

21. Venue is proper in Pierce County because Defendant transacts business in Pierce County, and some part of the cause arose in Pierce County. RCW 4.12.020 and .025.

22. This matter is properly in this Court because the aggregate amount in controversy is under $5 million and the size of Guillemette's proposed class is fewer than 100 individual members (but more than 40).

## PARTIES

23. GP employed Guillemette as a panel operator from approximately June 2024 until August 2025.

24. Throughout his employment, GP classified Guillemette as non-exempt and paid him by the hour.

25. GP subjected Guillemette to its pre-shift off the clock policy, rounding policy meal period policy, and rest period policy.

26. Guillemette brings this class action on behalf of himself and similarly situated GP employees.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

27. Guillemette seeks to represent such a class under Washington law pursuant to CR 23.

28. The putative class of similarly situated employees is defined as:

> **All hourly employees in Washington who GP employed under its pre-shift off the clock policy, rounding policy, meal period policy, and/or rest period policy during the past 3 years through final resolution of this action (the "Hourly Employees").**

29. GP is a Delaware limited liability company headquartered in Atlanta, Georgia.

30. GP may be served through its registered agent: **United Agent Group Inc., 707 W. Main Avenue, #B1, Spokane, Washington 99201**.

## FACTS

31. GP touts that it "has developed the highest quality gypsum building products in the industry … [and is] still innovating with groundbreaking gypsum products."[1]

32. To meet its business objectives, GP hires employees, like Guillemette and the other Hourly Employees.

33. GP classifies Guillemette and the other Hourly Employees as non-exempt and pays them by the hour.

34. While exact job duties and locations may differ, Guillemette and the other Hourly Employees are all subject to GP's same or similar policies—its pre-shift off the clock policy, rounding policy, meal period policy, and rest period policy—while performing similar work.

35. For example, GP employed Guillemette as a panel operator from approximately June 2024 until August 2025.

36. Guillemette's job duties included maintaining, operating, and monitoring machinery to produce gypsum panels, as well as performing quality inspections.

37. GP paid Guillemette approximately $27.39 an hour.

[1] https://www.buildgp.com/about-us (last visited June 24, 2026).



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

38. Throughout his employment, Guillemette regularly worked more than 40 hours in a workweek.

39. Indeed, Guillemette typically worked 12 hours a day and a rotating schedule of 3 to 7 days a week (36 to 84 hours a workweek) "on the clock."

40. Likewise, the other Hourly Employees typically work similar, rotating 36 to 84 hour a workweek schedules "on the clock."

41. But GP does not pay Guillemette and its other Hourly Employees for all their hours worked, including overtime hours.

42. Specifically, GP subjects Guillemette and the other Hourly Employees to its pre-shift of the clock pay scheme.

43. For example, GP required Guillemette to prepare and put on safety gear (including hard hat, steel-toed boots, face shields, safety glasses, cut proof safety gloves), prior to his scheduled shifts, on GP's premises, and without compensation.

44. This took Guillemette approximately 15 minutes each workday.

45. Guillemette could not safely perform his job duties in accordance with GP's policies, procedures and expectations without his safety gear.

46. The donning of safety gear awas authorized and required work duties for Guillemette at the workplace prescribed by GP because these duties were fundamentally intertwined with his other job duties.

47. But under its pre-shift off the clock policy, GP did not compensate Guillemette for the same.

48. Thus, because of its pre-shift off the clock policy, GP failed to pay Guillemette wages, including overtime wages, for all hours worked, in violation of Washington law.

49. Guillemette and the other Hourly Employees perform their jobs under GP's supervision and use materials, equipment, and technology GP approves and supplies.

50. GP requires Guillemette and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

51. At the end of each pay period, Guillemette and the other Hourly Employees receive wages from GP that are determined by common systems and methods that GP selects and controls.

52. But, just as with Guillemette, GP fails to pay the other Hourly Employees for all their hours worked.

53. GP subjects the other Hourly Employees to its same pre-shift off the clock policy.

54. Specifically, like Guillemette, GP requires the other Hourly Employees to prep and put on safety gear (including hard hat, steel-toed boots, face shields, safety glasses, cut proof safety gloves), prior to their scheduled shifts, on GP's premises, and without compensation.

55. And like Guillemette, these jobs duties take the other Hourly Employees approximately 10 to 15 minutes each workday.

56. GP fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that GP does not want performed.

57. And GP knows, should know, or recklessly disregards whether Guillemette and the other Hourly Employees routinely perform work "off the clock," before their shifts.

58. Thus, GP requires, authorizes, suffers, or permits Guillemette and the other Hourly Employees to work "off the clock," without compensation, before their scheduled shifts.

59. Despite accepting the benefits, GP does not pay Guillemette and the other Hourly Employees for the compensable work they perform "off the clock" before their scheduled shifts.

60. Thus, under GP's pre-shift off the clock policy, Guillemette and the other Hourly Employees are denied wages, including overtimes wages, for compensable work they perform "off the clock," in violation of Washington law.

61. Further, GP subjects Guillemette and the other Hourly Employees to its rounding policy.

62. Specifically, GP automatically rounds Guillemette and the Hourly Employees recorded clock in and clock out punches to the nearest quarter for GP's primary benefit and to the detriment of these employees.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

63. GP also prohibits Guillemette and the other Hourly Employees from clocking in for their shifts more than 7.5 minutes before their shift start times and clocking out more than 7.5 minutes after their shift end times.

64. And GP takes disciplinary action or threatens to do so if Guillemette and the other Hourly Employees clock in even a minute past their scheduled start times or clock out even a minute before their scheduled end times.

65. GP further requires and expects Guillemette and the other Hourly Employees to perform their normal job duties immediately upon clocking in.

66. By enforcing these policies, GP ensures its rounding policy benefits GP and detriments Guillemette and the Hourly Employees.

67. Thus, under GP's rounding policy, Guillemette and the other Hourly Employees are denied wages for all hours worked, including overtime wages for overtime hours.

68. Additionally, GP imposes its meal period policy on Guillemette and the other Hourly Employees.

69. Specifically, largely due to understaffing combined with production demands, GP requires these employees to continue performing their normal job duties throughout their shifts without *bona fide* "meal periods."

70. Guillemette and the other Hourly Employees do not receive compliant, *bona fide* meal periods, even when they work more than five hours in a day.

71. Instead, GP requires Guillemette and the other Hourly Employees to remain on duty and perform compensable work throughout their shifts for GP's benefit, including during any so called "meal periods."

72. And GP subjects Guillemette and the other Hourly Employees to work interruptions during any attempted "meal periods."

73. Thus, Guillemette and the other Hourly Employees are not free to engage in personal activities, even during attempted "meal periods."



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

74. Rather, during any attempted "meal period," Guillemette and the other Hourly Employees are forced to substantially perform their regular duties and responsibilities.

75. Guillemette and the other Hourly Employees routinely spend any supposed "meal periods" performing work for GP's—not their own—benefit.

76. This time is compensable under Washington law because GP knew, or should have known, that (1) Guillemette and the other Hourly Employees were performing work during "meal periods," (2) they were interrupted with work duties during attempted "meal periods," (3) they were not completely relieved of all duties during "meal periods," (4) they entirely skipped "meal periods" due to work demands, (5) "meal periods" were less than 30 consecutive minutes, (6) they were not free to engage in personal activities during "meal periods" because of work interruptions, (7) they remained on GP's premises or under GP's supervision, and/or (8) they spent "meal periods" substantially performing their regular job duties for GP's benefit.

77. Likewise, GP fails to provide Guillemette and the other Hourly Employees with a *bona fide* 10-minute rest period for every four hours worked or major fraction thereof.

78. Rather, GP requires Guillemette and the other Hourly Employees to work throughout their shifts, including during any so called "rest periods" and/or subjects them to work interruptions during any attempted rest periods.

79. Thus, under its pre-shift off the clock policy, rounding policy, meal period policy, and rest period policy, GP fails to pay and willfully withholds earned wages, including overtime wages, from Guillemette and its other Hourly Employees in violation of the WIWA and related L&I regulations, in addition to violating the WMWA and WWRA.

## CLASS ACTION ALLEGATIONS

80. Guillemette realleges and incorporates paragraphs 1. through 79. of this Complaint.

81. Like Guillemette, the other Hourly Employees are victimized by GP's pre-shift off the clock policy, rounding policy, meal period policy, and/or rest period policy.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

82. Other Hourly Employees worked with Guillemette and indicated they were paid in the same manner, performed similar work, and were subject to GP's pre-shift off the clock policy, rounding policy, meal period policy, and/or rest period policy.

83. Based on her experience, Guillemette is aware GP's pre-shift off the clock policy, rounding policy, meal period policy, and rest period policy were imposed on other Hourly Employees.

84. The putative class of Hourly Employees includes more than 40 members (but fewer than 100).

85. Thus, the putative class of Hourly Employees is so numerous that joinder of all class members in one lawsuit is impracticable.

86. The Hourly Employees are similarly situated in the most relevant respects.

87. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages, overtime wages and compliant meal and rest periods.

88. The only relevant inquiry is whether the Hourly Employees were subject to GP's pre-shift off the clock policy, rounding policy, meal period policy, and rest period policy.

89. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class treatment.

90. Rather, GP's pre-shift off the clock policy, rounding policy, meal period policy, and rest period policy renders Guillemette and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages, including overtime wages, and *bona fide* meal and rest periods.

91. GP's records reflect the number of hours the Hourly Employees worked and were paid each week "on the clock."

92. GP's records reflect that it automatically rounded the Hourly Employees hours to the nearest quarter hour for its own primary benefit.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

93. The wages owed to Guillemette and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

94. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to GP's records, and there is no detraction from the common nucleus of liability facts.

95. Therefore, the issue of damages does not preclude class treatment.

96. Guillemette's experiences are typical of the experiences of the other Hourly Employees.

97. Guillemette has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class treatment.

98. Guillemette has an interest in obtaining the unpaid wages owed to the Hourly Employees under Washington law.

99. Guillemette and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

100. Guillemette retained counsel with significant experience litigating complex class actions.

101. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.

102. Absent this class action, many Hourly Employees will not obtain redress for their injuries, and GP will reap the unjust benefits of violating Washington law.

103. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

104. Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and GP.

105. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency as well as parity among the Hourly Employees' claims.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

106. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

107. Among the common questions of law and fact are:

(a) Whether GP's pre-shift off-the-clock policy failed to compensate the Hourly Employees for all hours worked;

(b) Whether GP's pre-shift off the clock policy deprived the Hourly employees of overtime when they worked more than 40 hours in a workweek;

(c) Whether GP engaged in a policy and practice of requiring its Hourly Employees to perform their typical job duties throughout their shifts, including during so called "meal periods" or "rest periods";

(d) Whether GP failed to provide its Hourly Employees with *bona fide* meal and/or rest periods in violation of the WIWA and related Washington L&I regulations;

(e) Whether GP automatically rounded the Hourly Employees clock in and out punches to the nearest quarter hour;

(f) Whether GP failed to pay its Hourly Employees overtime at rates of at least 1.5 times their regular rates of pay, based on all remuneration, for hours worked after 40 in a workweek;

(g) Whether GP willfully withheld earned wages from its Hourly Employees; and

(h) Whether GP's violations were willful.

108. The Hourly Employees are known to GP, are readily identifiable, and can be located through GP's business and personnel records.

**GP'S VIOLATIONS WERE WILLFUL**

109. Guillemette realleges and incorporates paragraphs 1. through 108. of this Complaint.

110. GP knew its Hourly Employees were non-exempt employees entitled to overtime.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

111. GP knew it paid its Hourly Employees by the hour.

112. GP knew it was subject to the WMWA's overtime provisions.

113. GP knew the WMWA required it to pay non-exempt employees, including the Hourly Employees, earned wages, including overtime wages for all hours worked after 40 in a workweek.

114. GP knew it paid its Hourly Employees according to its pre-shift off the clock policy, rounding policy, meal period policy, and rest period policy.

115. GP knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

116. GP knew it automatically rounded the Hourly Employees clock in and clock out times to the nearest quarter hour for its own primary benefit.

117. GP knew it required the Hourly Employees to don safety gear "off the clock."

118. GP knew it controlled the Hourly Employees' work procedures.

119. GP knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

120. In other words, GP knew its Hourly Employees performed compensable work "off the clock" and without compensation.

121. GP knew it was subject to the WWRA.

122. GP knew the WWRA prohibited it from willfully withholding earned wages from employees, including the Hourly Employees.

123. GP knew each Hourly Employee worked more than 40 hours in at least one workweek during relevant period(s).

124. GP knew its Hourly Employees were non-exempt employees entitled to overtime.

125. GP knew it paid its Hourly Employees by the hour.

126. GP knew its Hourly Employees did not actually receive *bona fide* meal periods and rest periods.



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

127. GP knew its Hourly Employees regularly spent their "meal periods" performing their regular job duties.

128. GP knew it was subject to the WIWA and the Washington L&I regulations that require it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 30-minute meal period for every 5 hours worked.

129. GP knew it was subject to the WIWA and the Washington L&I regulations that require it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 30-minute rest period for every 4 hours worked or major fraction thereof.

130. GP knew, should have known, or recklessly disregarded the WIWA and the Washington L&I regulations.

131. GP knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated Washington law.

132. GP knowingly, willfully, and/or in reckless disregard of applicable Washington law carried out employment policies that systematically deprived its Hourly Employees of *bona fide* meal and rest periods, earned wages and premium overtime pay at the required rate.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE WMWA
## (CLASS ACTION)

133. Guillemette realleges and incorporates paragraphs 1 through 132 of this Complaint.

134. Guillemette brings his WMWA claim as a class action on behalf of himself and the other Hourly Employees pursuant to CR 23.

135. GP's conduct violates the WMWA. RCW 49.46, *et seq.*

136. At all relevant times, GP was subject to the WMWA because GP was (and is) an "employer" within the meaning of the WMWA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

137. At all relevant times, GP employed Guillemette and the other Hourly Employees as its covered "employees" within the meaning of the WMWA. *See* RCW 49.46.010(3); *see also* RCW 49.48.082(5)(a).



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

138. The WMWA requires employers, like GP, to pay non-exempt employees, including Guillemette and the other Hourly Employees, wages, including overtime wages at rates of at least 1.5 times their true regular rates of pay for all hours worked in excess of 40 in a workweek. RCW 49.46.130 *and* RCW 49.46.090.

139. Guillemette and the other Hourly Employees are entitled to wages, including overtime pay under the WMWA.

140. GP violated, and is violating, the WMWA by failing to pay non-exempt employees (Guillemette and the other Hourly Employees) wages, including overtime wages at rates of at least 1.5 times their true regular rates of pay for all hours worked after 40 in a workweek. *See* RCW 49.46.130; *see also* RCW 49.46.090.

141. GP's unlawful conduct harmed Guillemette and the other Hourly Employees by depriving them of the wages owed under Washington law.

142. Accordingly, GP owes Guillemette and the other Hourly Employees the difference between the wages paid and the wages, including overtime wages earned plus pre-judgment interest at a rate of 12% per annum. RCW 19.52.020 *and* RCW 49.46.090.

143. Finally, Guillemette and the other Hourly Employees are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.46.30.

## COUNT II
## WILLFULLY WITHHOLDING EARNED WAGES UNDER THE WWRA
## (CLASS ACTION)

144. Guillemette realleges and incorporates paragraphs1 through 132 of this Complaint.

145. Guillemette brings his WWRA claim as a class action on behalf of himself and the other Hourly Employees pursuant to CR 23.

146. GP's conduct violates the WWRA. RCW 49.52, *et seq.*

147. At all relevant times, GP was subject to the WWRA because GP was (and is) an "employer" within the meaning of the WWRA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

148. At all relevant times, GP employed Guillemette and the other Hourly Employees as covered "employees" within the meaning of the WWRA. *See* RCW 49.12.005(4); *see also* RCW 49.48.082(5)(b).

149. The WWRA prohibits employers, like GP, from depriving employees, including Guillemette and the other Hourly Employees, of "any part of his or his wages" and from "pay[ing] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract." RCW 49.52.050.

150. GP violated, and is violating, the WWRA by willfully withholding earned wages from Guillemette and the other Hourly Employees for the hours they worked during their on-duty "meal periods" and "rest periods," which GP was obligated to pay under Washington law. *See* RCW 49.52.050.

151. GP also violated, and is violating, the WWRA by willfully withholding earned overtime wages from Guillemette and the other Hourly Employees, which Washington law obligated GP to pay at rates not less than 1.5 times their regular rates of pay. *See* RCW 49.52.050

152. GP's unlawful conduct harmed Guillemette and the other Hourly Employees by willfully withholding earned wages (including earned overtime wages at the required premium rate) from these employees, which they are owed under Washington law.

153. Accordingly, GP owes Guillemette and the other Hourly Employees their willfully withheld earned wages plus exemplary damages in an amount equal to 2 times their willfully withheld wages. RCW 49.52.070.

Finally, Guillemette and the other Hourly Employees are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.52.070.

## COUNT III
## FAILURE TO PROVIDE *BONA FIDE* MEAL AND REST PERIODS UNDER THE WIWA
## (CLASS ACTION)

154. Guillemette realleges and incorporates paragraphs 1 through 132 of this Complaint.

155. Guillemette brings his meal and rest periods claims under the WIWA and related



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

L&I regulations as a class action on behalf of himself and the other Hourly Employees pursuant to CR 23.

156. GP's conduct violates the WIWA's (and the related L&I regulations') meal and rest period requirements. RCW 49.12, *et seq.*; WAC 296-126-092.

157. At all relevant times, GP was subject to the WIWA and related L&I regulations because GP was (and is) an "employer" within the meaning of the WIWA and the L&I regulations. *See* RCW 49.12.005(3); WAC 296-126-002(1).

158. At all relevant times, GP employed Guillemette and the other Hourly Employees as covered "employees" within the meaning of the WIWA and the Washington L&I regulations. *See* RCW 49.12.005(4); WAC 296-126-002(2).

159. The WIWA prohibits employers, like GP, from employing employees, including Guillemette and the other Hourly Employes, under conditions of labor detrimental to their health. RCW 49.12.020.

160. The L&I regulations require employers, like GP, to provide employees, including Guillemette and the other Hourly Employees, meal periods of at least 30 minutes which commence no less than 2 hours nor more than 5 hours from the beginning of the employees' shift. WAC 296-126-092(1).

161. The L&I regulations further mandate that meal periods shall be paid when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. WAC 296-126-092(1).

162. The L&I regulations also require employers, like GP, to provide employees, including Guillemette and the other Hourly Employees, rest periods of at least 10 minutes for every 4 hours of working time. WAC 296-126-092(4).

163. The L&I regulations further prohibit employers, like GP, from requiring employees, including Guillemette and the other Hourly Employees, to work more than 3 hours without a rest period. WAC 296-126-092(4).

164. Washington law also requires employers, like PG, to compensate employees,



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

including the Hourly Employees, for denied, missed, or interrupted meal and rest periods. *See, e.g.*, *Androckitis v. Virginia Mason Med. Ctr.*, 32 Wn. App. 2d 418 (2024), *review denied*, 4 Wn. 3d 1007 (2025); *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn. 2d 507 (2018); *Pellino v. Brinks Inc.*, 190 Wn. 2d 507 (2018).

165. Throughout the relevant period, GP expected and required Guillemette and the other Hourly Employees to remain on duty and perform compensable work throughout their shifts, including during their "meal and rest periods."

166. Guillemette and the other Hourly Employees were not relieved of all duties during their attempted meal and rest periods but instead were subject to work interruptions.

167. Thus, GP violated, and is violating, the WIWA, WMWA, and related L&I regulations by failing to provide Guillemette and the other Hourly Employees *bona fide* meal and rest periods. *See* RCW 49.12.020; WAC 296-126-092.

168. GP's unlawful conduct harmed Guillemette and the other Hourly Employees by depriving them of the *bona fide* meal and rest periods they are owed under Washington law.

169. Accordingly, Guillemette and the Hourly Employees are entitled to recover their unpaid wages for their missed meal and rest periods, penalty wages, and pre-judgment interest at a rate of 12% per annum. RCW 19.52.020.

170. Finally, Guillemette and the other Hourly Employees are also entitled to recover their reasonable attorney's fees and costs incurred in this action. RCW 49.12.150

## RELIEF SOUGHT

WHEREFORE, Guillemette, individually and on behalf of the other Hourly Employees, seeks the following relief:

(a) An Order certifying this lawsuit as a class action pursuant to WASH. SUP. CT. CIV. R. 23.

(b) An Order appointing Guillemette and his counsel to represent the interests of the Hourly Employees;

(c) An Order finding GP liable to Guillemette and the other Hourly Employees



JOSEPHSON DUNLAP, LLP
5847 San Felipe, Suite 2400
Houston, Texas 77057
(713) 352-1100

for failing to provide them with *bona fide* meal and rest periods plus all available statutory penalties;

(d) An Order finding GP liable to Guillemette and the other Hourly Employees for all unpaid overtime wages owed under the WMWA, plus pre-judgment interest at a rate of 12% per annum;

(e) An Order finding GP liable to Guillemette and the other Hourly Employees for all willfully withheld wages owed under the WWRA, plus exemplary damages in an amount equal to 2 times their willfully withheld wages;

(f) An Order awarding attorney's fees, costs, and expenses to the Hourly Employees;

(g) A Judgment against GP awarding Guillemette and the other Hourly Employees all their willfully withheld wages, unpaid overtime, liquidated damages, exemplary damages, statutory damages, attorney's fees, costs, expenses, and any other penalties available under the WMWA, WWRA, and WIWA;

(h) An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

(i) All such other and further relief as may be necessary and appropriate.

Date: July 10, 2026

Respectfully submitted,

**FRANK FREED SUBIT & THOMAS, LLP**

By: */s/ Michael C. Subit*
Michael C. Subit, WSBA #29189
msubit@frankfreed.com
705 Second Ave., Suite 1200
Seattle, Washington 98104
Telephone: 206.682.6711

**JOSEPHSON DUNLAP, LLP**

Michael A. Josephson*
mjosephson@mybackwages.com
Andrew W. Dunlap*
adunlap@mybackwages.com
5847 San Felipe, Suite 2400
Houston, Texas 77057
Telephone: 713.352.1100

**BRUCKNER BURCH, PLLC**

Richard J. (Rex) Burch*
rburch@brucknerburch.com
5847 San Felipe, Suite 2400
Houston, Texas 77057
Telephone: 713.877.8788

**Pro Hac Vice Applications Forthcoming*

**ATTORNEYS FOR GUILLEMETTE**
**& THE HOURLY EMPLOYEES**